**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
LAURA LYNN PACE,

                          Plaintiff,

            -against-

TOWN OF SOUTHAMPTON, THE
SOUTHAMPTON TOWN POLICE
DEPARTMENT, JAMES P. OVERTON, CHIEF
OF POLICE and POLICE OFFICER ANTHONY
VECCHIO,

                         Defendants.
----------------------------------------------------------X

**MEMORANDUM OF**
**DECISION AND ORDER**
08-CV-3719 (ADS)(ARL)

**APPEARANCES:**

**Foster & Vandenburgh, LLP**
Attorneys for the Plaintiff
220 Roanoke Avenue
Riverhead, NY 11901
      By: Richard W. Vandenburgh, Esq., Of Counsel

**Devitt Spellman Barrett, LLP**
50 Route 111
Smithtown, NY 11787
      By: Jeltje De Jong, Esq.
         Kelly Wright, Esq., Of Counsel

**SPATT, District Judge**.

      Laura Pace ("the Plaintiff") brings this action, alleging claims for violations of her civil rights under 42 U.S.C. § 1983 ("Section 1983"), arising from her arrest on August 19, 2007, for criminal contempt in the second degree and harassment in the second degree. The Plaintiff contends that Southampton Police Officer Anthony

Vecchio ("Officer Vecchio") arrested her without probable cause and used excessive force in doing so. The Plaintiff further claims that the Town of Southampton ("Southampton"), the Town of Southampton Police Department ("the SPD"), and SPD Chief James P. Overton ("Chief Overton") are liable under Section 1983 for these alleged constitutional violations. Presently before the Court is the Defendants' motion for summary judgment. For the reasons that follow, the Defendants' motion is granted in part and denied in part.

## I.  BACKGROUND

During the summer of 2007, Laura and Michael Pace were in the process of obtaining a divorce. On August 6, 2007, Michael Pace obtained an Ex Parte Temporary Order of Protection ("the order of protection") in the Suffolk County Family Court which prohibited the Plaintiff from, among other things, stalking and harassing the couple's two young children.

On August 19, 2007, the Plaintiff was driving in a car with her mother on Route 105, heading toward Riverhead, New York when she observed a man with a young child riding a jet ski in the water as she passed over a bridge spanning the Peconic Bay. Believing that the man on the jet ski was her estranged husband and that the child aboard the jet ski was her three-year old daughter Angelina, the Plaintiff pulled over to the roadside to get a closer look. The Plaintiff spent less than one minute at the roadside. The Plaintiff then decided to drive to the Indian Island Golf

Course where she could get a clearer view. From her vantage point at the golf course, she continued to observe her children for approximately two to three minutes.

Later that day, Michael Pace called the SPD to complain that the Plaintiff had violated the order of protection. Officer Vecchio responded to the call and took a sworn, written statement from Michael Pace detailing the incident. According to the sworn statement made to Officer Vecchio, Michael Pace initially observed the Plaintiff standing on the Route 105 bridge taking pictures of him and the children. The statement also noted that the Plaintiff subsequently traveled to the Indian Island Golf Course where she watched them for forty-five minutes to an hour. Based upon Michael Pace's statement, Officer Vecchio concluded that the Plaintiff had violated the order of protection.

After taking the statement from Michael Pace, Officer Vecchio traveled to the Plaintiff's home and placed her under arrest. It is undisputed that she was handcuffed behind her back and that Officer Vecchio touched her head as he placed her in his vehicle. At a certain point during her arrest, the Plaintiff told Officer Vecchio that she stopped at the roadside "to see if [her] kids were safe," and that she "went to Indian Island to see if [she] could see [her] kids from there." Southampton Town Police Department Supp. Rep., Exhibit D to Defendants' Motion for Summary Judgment.

The Plaintiff argues that she was the victim of a false arrest and excessive force on the part of Officer Vecchio. She also contends that Southampton, the SPD,

and Chief Overton should be held liable for these alleged constitutional violations under Section 1983. On the other hand, the Defendants maintain that Officer Vecchio used only minimal force in effectuating the Plaintiff's arrest. They also contend that he had probable cause to arrest her. In the alternative, the Defendants contend that Officer Vecchio is shielded from liability by the doctrine of qualified immunity. With respect to the issue of municipal liability, the Defendants submit that the Plaintiff has failed to demonstrate that an official policy or custom caused the alleged constitutional violations.

## II. DISCUSSION

### A. Standard - Fed. R. Civ. P. 56

It is well-settled that summary judgment under Fed. R. Civ. P. 56(c) is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). In determining whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." Cronin v. Aetna Life

Ins. Co., 46 F.3d 196, 202 (2d Cir.1995) (citing United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962) (per curiam), and Ramseur v. Chase Manhattan Bank, 865 F.2d 460, 465 (2d Cir. 1989)).

If the moving party meets its initial burden of demonstrating the absence of a disputed issue of material fact, the burden shifts to the nonmoving party to present "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). The nonmoving party may not then rely solely on "conclusory allegations or unsubstantiated speculation" in order to defeat a motion for summary judgment. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998). If the evidence favoring the nonmoving party is "merely colorable . . . or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted).

**B.  Section 1983 - Excessive Force**

The Plaintiff contends that Officer Vecchio used excessive force in effectuating her arrest. The Defendants counter that summary judgment on this claim is appropriate because it is undisputed that Officer Vecchio merely handcuffed the Plaintiff behind her back and touched her head while placing her into his vehicle.

A police officer's use of force is excessive in violation of the Fourth Amendment, "if it is objectively unreasonable 'in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation.'" Maxwell v. City of New York, 380 F.3d 106, 108 (2d Cir. 2004) (quoting Graham v. Connor,

490 U.S. 386, 397, 109 S. Ct. 1865; 104 L. Ed. 2d 443 (1989)). "Frequently, a reasonable arrest involves handcuffing the suspect, and to be effective handcuffs must be tight enough to prevent the arrestee's hands from slipping out." Esmont v. City of New York, 371 F. Supp. 2d 202, 214 (E.D.N.Y. 2005) (citing Cavazos v. Voorhies, 00-CV-7929, 2002 WL 31017492, at *3 (N.D.Ill. Sept. 9, 2002)). "[I]n evaluating the reasonableness of handcuffing, a Court is to consider evidence that: 1) the handcuffs were unreasonably tight; 2) the defendants ignored the arrestee's pleas that the handcuffs were too tight; and 3) the degree of injury to the wrists." Id. (citing Burchett v. Kiefer, 310 F.3d 937, 944-45 (6th Cir. 2002)) (additional citation omitted).

Here, the Plaintiff does not claim that the handcuffs were unreasonably tight. Nor has she alleged that she sustained any injuries to her wrists. The only other contact that Officer Vecchio made with the Plaintiff was in touching her head as he placed her inside his vehicle. Under the circumstances, it is clear that the minimal force Officer Vecchio used to arrest the Plaintiff was not excessive. Accordingly, Officer Vecchio is entitled to summary judgment dismissing the Plaintiff's excessive force claim.

**C.  Section 1983 - False Arrest**

The Plaintiff's Section 1983 claim for false arrest derives from her Fourth Amendment right to remain free from unreasonable seizures, which includes the right to remain free from arrest absent probable cause. Weyant v. Okst, 101 F.3d 845, 852

(2d Cir. 1996). Defendants assert that the Plaintiff's false arrest claim is deficient as a matter of law because probable cause existed for her arrest. In the alternative, the Defendants argue that Officer Vecchio is shielded from liability based upon qualified immunity.

**1. Probable Cause**

The elements of a false arrest claim under Section 1983 are similar to those of a false arrest claim under New York law. Weyant, 101 F.3d at 852; see Davis v. Rodriguez, 364 F.3d 424, 433 (2d Cir. 2004) ("In analyzing § 1983 claims for unconstitutional false arrest, we have generally looked to the law of the state in which the arrest occurred."). To establish the requisite elements of a false arrest, a plaintiff must show that: (1) the defendants intended to confine her; (2) she was conscious of her confinement; (3) she did not consent to be confined; and (4) the confinement was not otherwise privileged. Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995); Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994). In the instant case, only the last element is at issue as the Defendants argue that the arrest was privileged because it was supported by probable cause.

The Second Circuit has determined that "the existence of probable cause is an absolute defense to a false arrest claim." Jaegly v. Couch, 439 F.3d 149, 152 (2d Cir. 2006); see Weyant, 101 F.3d at 852 (noting that probable cause is a complete defense to an action for false arrest regardless of whether the claim is brought under Section

1993 or New York state law). Probable cause exists when the arresting officer "has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Jaegly, 439 F.3d at 152 (quoting Weyant, 101 F.3d at 852). A court's inquiry into probable cause must focus solely on the facts available to the officer at the time of the arrest. Devenpeck v. Alford, 543 U.S. 146, 153, 125 S. Ct. 588, 160 L. Ed. 2d 537 (2004); Ricciuti v. New York City Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997). Therefore, facts learned subsequent to the arrest, "whether they buttress or belie the existence of probable cause, are irrelevant to the false arrest claim." Parisi v. Suffolk County, 04-CV-2187, 2009 WL 4405488, at *6 (E.D.N.Y. Nov. 30, 2009) (citing Ricciuti, 124 F.3d at 128). The Court's task, at this stage, is to determine if there are triable issues of fact concerning whether Officer Vecchio lacked probable cause to arrest the Plaintiff for criminal contempt in the second degree, N.Y. Penal Law §215.50, or harassment in the second degree, N.Y. Penal Law § 240.26. Jaegly, 439 F.3d at 152.

Under New York law, a person is guilty of criminal contempt in the second degree "when he engages in . . . intentional disobedience or resistance to the lawful process or other mandate of a court . . ." N.Y. Penal Law § 215.50. The order of protection that the Plaintiff was thought to have violated prohibited her from, among other things, stalking and harassing either of the couple's two young children. At the

8

time of the Plaintiff's arrest, Officer Vecchio was acting upon a sworn, written statement from Michael Pace.

However, the Court does not find, as a matter of law, that Michael Pace's statement was sufficient to give Officer Vecchio a reasonable belief that the Plaintiff was stalking or harassing her children in violation of the order of protection. There is no dispute as to the information Officer Vecchio was operating with when he arrested the Plaintiff. Michael Pace's statement indicated that the Plaintiff had taken pictures of him interacting with the children from the Route 105 bridge and then watched the children from the golf course for an additional forty-five minutes to one hour. Both of these vantage points were apparently hundreds of yards away from the children, who were either in the water on the jet ski or on a dock of the Peconic Bay. On these facts, Court finds that there is a triable issue as to whether this information was sufficient to furnish an officer of reasonable caution with the belief that the Plaintiff committed criminal contempt in the second degree by violating the order of protection.

Under New York law, "[a] person is guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person . . . [h]e or she follows a person in or about a public place or places." N.Y. Pen. Law § 240.26(2). Here, the Court finds that there is a factual issue concerning whether it was reasonable under the circumstances for Officer Vecchio to conclude that the Plaintiff committed harassment in the second degree. Although it may have been reasonable for Officer Vecchio to

9

conclude that the Plaintiff followed the children in a public place, in light of the distance from which the Plaintiff observed the children, the Court is not convinced that Michael Pace's statement would have reasonably suggested to Officer Vecchio that the Plaintiff acted with the requisite intent to "harass, annoy, or alarm." N.Y. Pen. Law § 240.26(2).

The Defendants further argue that the arrest was privileged because the Plaintiff's "conduct fell under the mandatory arrest provision" of New York Criminal Procedure Law § 140.10(4)(b). Defs. Mem. at 9. Under this provision, "a police officer shall arrest a person . . . where such officer has reasonable cause to believe that": (1) a duly served order of protection is in effect; and (2) the defendant has violated that order by committing a "family offense" as defined by New York's Family Court Act § 812 or New York Criminal Procedure Law § 530.11. N.Y. Criminal Procedure Law § 140.10(4). The Defendants contend that because stalking and harassment are two of the enumerated "family offenses" to which § 140.10(4)(b)(ii) refers, it follows that Officer Vecchio had no choice but to arrest the Plaintiff. However, this argument overlooks the factual issues the Court has identified.

The Court has already determined that there is a material triable issue concerning whether Officer Vecchio had "reasonable cause" to believe that the order of protection had been violated. Given that the Plaintiff was several hundred yards

away from the children, there is a question as to whether Michael Pace's statement could have led Officer Vecchio to reasonably believe that the Plaintiff had committed the "family offenses" of stalking or harassment. Under the circumstances, it does not follow, as a matter of law, that § 140.10 justified the Plaintiff's arrest.

Although there are critical factual issues concerning whether Officer Vecchio had probable cause to arrest the Plaintiff on either of the two criminal charges, Officer Vecchio may still be entitled to summary judgment if the Court determines that he is entitled to qualified immunity.

### 2. Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). In this regard, the doctrine of qualified immunity "balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Id.

When analyzing qualified immunity in the context of a suit for damages based on an arrest allegedly without probable cause, a police officer is immune from such

suit "'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" Posr v. Court Officer Shield No. 207, 180 F.3d 409, 416 (2d Cir. 1999) (quoting Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991)). The Second Circuit has explained this concept of "arguable probable cause" as follows:

> [a]rguable probable cause exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well established law. It is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials-like other officials who act in ways they reasonably believe to be lawful-should not be held personally liable.

Cerrone v. Brown, 246 F.3d 194, 203 (2d Cir. 2001) (quotations and citations omitted). As with the probable cause inquiry, the Court only evaluates facts known to the arresting officer at the time of the arrest. Cornett v. Brown, 04-CV-0754, 2007 WL 2743485, at *8 (E.D.N.Y. Sept.17, 2007), aff'd, Cornett v. Jamison, 326 Fed. Appx. 624 (2d Cir. 2009). Ultimately, arguable probable cause exists "if the undisputed facts and all permissible inferences favorable to the plaintiff show . . . that officers of reasonable competence could disagree on whether the probable cause test was met ."' McClellan v. Smith, 439 F.3d 137, 147 (2d Cir. 2006) (quoting Robison v. Via, 821 F.2d 913, 921 (2d Cir. 1987)).

The Court has already determined that there is a genuine factual issue concerning whether it was objectively reasonable for Officer Vecchio to believe that probable cause existed to arrest the Plaintiff. The remaining question for the Court, then, is whether "officers of reasonable competence could disagree on whether the probable cause test was met." Posr, 180 F.3d at 416 (quoting Golino, 950 F.2d at 870). Although it is a close question, the Court believes that a jury should determine whether reasonably competent officers could disagree about whether probable cause existed under these circumstances. A trier of fact could determine that reasonably competent officers would agree that probable cause was lacking in this case where the Plaintiff was observing her children from several hundred yards away.

The Court appreciates that qualified immunity is not simply a defense, but rather is also "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985). However, drawing all permissible inferences in favor of the Plaintiff, this case presents too close a question to deprive the Plaintiff of her day in court. Accordingly, the Court finds that Officer Vecchio is not entitled to qualified immunity on the Plaintiff's false arrest claim.

**D.  Section 1983 - Municipal Liability**

The Plaintiff contends that the municipal Defendants and Chief Overton are vicariously liable for her alleged false arrest because Officer Vecchio did not receive

proper training. The municipal Defendants and Chief Overton counter that summary judgment is warranted because the Plaintiff has failed to offer evidence that the alleged unconstitutional conduct on the part of Officer Vecchio was the product of an official policy, custom, or practice.

It is well-established that "a municipality cannot be held liable under § 1983 on a respondeat superior theory." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). In this regard, "Monell does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs it has sanctioned, led to an independent constitutional violation." Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006). A policy, custom, or practice may be inferred where "'the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction.'" Patterson v. County of Oneida, 375 F.3d 206, 226 (2d Cir. 2004) (quoting Kern v. City of Rochester, 93 F.3d 38, 44 (2d Cir. 1996)). Deliberate indifference may be shown by "evidence that the municipality had notice of but repeatedly failed to make any meaningful investigation into charges" that its officers were violating citizens' constitutional rights. Ricciuti, 941 F.2d at 123.

Here, the Plaintiff offers only the unsupported assertion that the municipal Defendants and Chief Overton failed to train officers "in psychological awareness

skills in order to prevent and avoid [the] false arrest of innocent persons." Compl. ¶¶ 21, 27, 32. Standing alone, this conclusory allegation will not suffice to create a triable issue of fact on the Plaintiff's Monell causes of action. See Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995) (internal citation and quotation omitted) (stating that "'[t]he mere assertion . . . that a municipality has [a] custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.'").

Critically, there is no evidence that the municipal Defendants or Chief Overton even had notice of charges that their officers were violating constitutional rights. See Ricciuti, 941 F.2d at 123 (citing City of Canton v. Harris, 489 U.S. 378, 387, 109 S. Ct. 1197, 1203, 103 L. Ed. 2d 412 (1989), and Fiacco v. City of Rensselaer, 783 F.2d 319, 328 (2d Cir. 1986)) (observing that "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy."). Absent such allegations, the Plaintiff has not even approached the standard of proof required to sustain a Monell claim on an inadequate training theory. Accordingly, the Defendants' motion for summary judgment is granted on this issue and the Plaintiff's complaint is dismissed as against Southampton, the SPD, and Chief Overton.

### E. The Plaintiff's State Law Claim

The Plaintiff's Sixth Cause of Action contains nothing more than the bare assertion that the Plaintiff's arrest violated the New York State Constitution. The Court generously interprets this cause of action as asserting a claim under the search and seizure clause of the New York State Constitution. See N.Y. CONST. § 12. However, "[a]lthough the New York Court of Appeals has recognized a 'narrow' private right of action for violations of the search and seizure provision of the state constitution, Brown v. State, 89 N.Y.2d 172, 192, 652 N.Y.S.2d 223, 674 N.E.2d 1129 (1996), it is unavailable where an alternative remedy will adequately protect the interests at stake." Coakley v. Jaffe, 49 F. Supp. 2d 615, 628-29 (S.D.N.Y. 1999) (citations omitted). Here, the Plaintiff can proceed to trial with a viable Fourth Amendment claim for false arrest under Section 1983. Given that any violation of the Plaintiff's Fourth Amendment rights can be vindicated through her Section 1983 claim, it follows that she has no private right of action under the New York State Constitution. Accordingly, the Defendants' motion for summary judgment is granted as to the Plaintiff's state law claim.

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED**, that the Plaintiff's Section 1983 excessive force claim is dismissed, and it is further

**ORDERED**, that the Defendants' motion for summary judgment dismissing the Plaintiff's Section 1983 false arrest claim is denied, and it is further

**ORDERED**, that the Plaintiff's Section 1983 Monell claims are dismissed, and it is further

**ORDERED**, that the complaint is dismissed as against the Town of Southampton, the Southampton Town Police Department, and Chief Overton, and it is further

**ORDERED**, that the Plaintiff's state law claim is dismissed, and it is further

**ORDERED**, that the parties are directed to appear for jury selection on Tuesday, January 19, 2010 at 9:00 a.m., and it is further

**ORDERED**, that the caption is amended as follows:

------------------------------------------------------------X
LAURA LYNN PACE,

                              Plaintiff,

      -against-

POLICE OFFICER ANTHONY VECCHIO,

                              Defendant.
------------------------------------------------------------X
**SO ORDERED**.

Dated: Central Islip, New York
January 13, 2010

                                           */s/ Arthur D. Spatt*
                                           ARTHUR D. SPATT
                                    United States District Judge